JUDGE ROMAN

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

# 14-CV 9549

--------------------------------------------------------------------

PEDRO SERRANO,

Plaintiff,

-against-

SPRING VALLEY BEAUTY SUPPLIES, INC.,
d/b/a SV BEAUTY SUPPLIES, and HON KYO PARK,
in his individual and professional capacities,

Defendants.

-----------------------------------------------------------------------X

**COMPLAINT**

**Docket No.:**

Jury Trial Demanded

2014 DEC -3   PM 3: 05
U.S. DISTRICT COURT
FILED
S.D. OF N.Y.

Pedro Serrano ("Plaintiff"), by and through his attorneys, BORRELLI & ASSOCIATES,

P.L.L.C., as and for his Complaint against SPRING VALLEY BEAUTY SUPPLIES, INC., d/b/a

SV BEAUTY SUPPLIES ("Defendant SV"), and HON KYO PARK, in his individual and

professional capacities (collectively as "Defendants"), alleges upon knowledge as to himself and

his own actions and upon information and belief as to all other matters as follows:

## NATURE OF THE CASE

1.      This is a civil action for damages and equitable relief based upon willful

violations that the Defendants committed of Plaintiff's rights guaranteed to him by: (i) the

overtime provisions of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 207(a); (ii) the

minimum wage provisions of the FLSA, 29 U.S.C. § 206(a); (iii) the overtime provisions of the

New York Labor Law ("NYLL"), N.Y. Lab. Law § 160; (iv) the minimum wage provisions of

the NYLL, N.Y. Lab. Law § 652(1); (v) the requirement that employers pay wages in accordance

with the agreed terms of employment pursuant to NYLL §§ 190, 191, and 663(1); (vi) the

requirement that employers furnish employees with wage statements on each payday containing

1

specific categories of information under the NYLL, N.Y. Lab. Law § 195(3); (vii) the requirement that employers furnish employees with wage notices annually and at the time of hire containing specific categories of information under the NYLL, N.Y. Lab. Law § 195(1)(a); (viii) the anti-retaliation provisions of the NYLL, N.Y. Lab. Law § 215; and (ix) any other claim(s) that can be inferred from the facts set forth herein.

2.      From early 1996 through November 25, 2014, Plaintiff worked as a cashier and sales associate for Defendants at their beauty supply warehouse located in Spring Valley, New York.  Throughout his employment, and as is relevant to this action, for the six-year period pre-dating Plaintiff's filing of this Complaint, Plaintiff worked between forty-nine and fifty-nine hours each week.  However, Defendants did not pay Plaintiff for the hours that he worked per week in excess of forty at any rate of pay, and thus not at either his statutorily-required overtime rate, straight-time rate, or even at the minimum wage rate of pay for those hours, as the FLSA and NYLL require.  In addition, Defendants failed to furnish Plaintiff with accurate and/or complete wage statements on each payday, nor did they provide Plaintiff with accurate wage notices at the time of hire or annually as the NYLL requires.

3.      Further, after Plaintiff complained to Defendants about their unlawful pay practices, Defendants retaliated by terminating Plaintiff's employment.

### JURISDICTION AND VENUE

4.      The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331, as this action arises under 29 U.S.C. §§ 201, *et seq.*  The supplemental jurisdiction of the Court is invoked pursuant to 28 U.S.C. § 1367 over all state law claims.

5.     Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391(b)(2), as a substantial part of the events comprising the claims for relief occurred within this judicial district.

**PARTIES**

6.     At all relevant times herein, Plaintiff is and was a resident of Spring Valley, New York, and is an "employee" entitled to protection as defined by the FLSA and NYLL.

7.     At all relevant times herein, Defendant SV was and is a domestic corporation organized under the laws of the State of New York with its principal place of business located at 180 East Central Avenue, Spring Valley, New York 10977.

8.     At all relevant times herein, Defendant Park was the owner and Chief Executive Officer of Defendant SV.  Defendant Park made all managerial decisions on behalf of Defendant SV, including all matters relating to compensation and rates and methods of pay, with respect to Plaintiff, as those terms are defined below.  Notably, Defendant Park is the person who hired and fired Plaintiff.

9.     At all relevant times herein, Defendants are "employers" and within the meaning of the FLSA and NYLL.  Additionally, the Defendants' qualifying annual business exceeds $500,000, and Defendants are engaged in interstate commerce within the meaning of the FLSA as they purchased and routinely work with products and supplies provided by outside vendors in the course of their business, such as the purchasing of beauty supplies from venders, which originated in states other than New York, the combination of which subjects Defendants to the FLSA's overtime requirements as an enterprise.  Furthermore, all of Defendants' employees, including Plaintiff, are individually engaged in interstate commerce, as they all handle and work with goods that have been and continue to be moved in interstate commerce.  Specifically,

Plaintiff handled beauty supplies that were shipped to Defendants SV via interstate commerce. This independently subjects Defendants to the overtime requirements of the FLSA with respect to Plaintiff.

## BACKGROUND FACTS

10.     Defendant Park controls, owns, operates, and makes all managerial decisions on behalf of Defendant SV, including those with respect to the manner and rates of compensating employees and the hours that the Defendants require their employees to work.

11.     Defendant Park has final say over all managerial decisions and exercises that authority on a daily basis with respect to Defendant SV.  Notably, Defendant Park is the person who hired and fired Plaintiff.

12.     Defendant SV is a beauty supply wholesaler located at 180 East Central Avenue, Spring Valley, New York 10977.

13.     Plaintiff's employment at Defendant SV spanned from 1996 until he was terminated in direct retaliation for complaining about Defendants' pay practices on November 25, 2014.

14.     Plaintiff worked for Defendants as a cashier and in-store sales associate with his principal responsibilities being filling orders of beauty supplies, accepting payment from customers, working the cash register, and stocking supplies.

15.     From November 2008 through in or around February 2010, Defendants required Plaintiff to work, and Plaintiff did in fact work, forty-six hours per week, all for Defendants' benefit.  To work these hours, Plaintiff worked four days per week.

16.     Specifically, Defendants required Plaintiff to work four eleven and one-half hour shifts each week, from 8:30 a.m. to 8:00 p.m., Sundays through Wednesdays.  Defendants did

not allow Plaintiff to vary his schedule, nor did they permit him to take scheduled or uninterrupted breaks during his shift.  During this period, Defendants paid Plaintiff $400 per week, with this amount meant to cover only Plaintiff's first forty hours worked per week.  As a result, Plaintiff's hourly rate for his first forty hours worked each week computes to $10 per hour, making his overtime rate $15 per hour.  The Defendants did not pay Plaintiff at any rate of pay for any hours that he worked per week in excess of forty.

17.   From in or around February 2010 through in or around December 2013, Defendants required Plaintiff to work, and Plaintiff did in fact work, fifty-nine hours per week, all for Defendants' benefit.  To work these hours, Plaintiff worked six days per week.

18.   Specifically, Defendants required Plaintiff to work four eleven hour shifts each week, from 9:00 a.m. to 8:00 p.m. on Mondays through Thursdays, one five hour shift each week, from 9:00 a.m. to 2:00 p.m. on Fridays, and one ten hour shift each week, from 9:00 a.m. to 7:00 p.m. on Sundays.  Defendants did not allow Plaintiff to vary his schedule, nor did they permit him to take scheduled or uninterrupted breaks during his shift.

19.   From in or around February 2010 through in or around February 2011, Defendants paid Plaintiff $500 per week, with this amount meant to cover only Plaintiff's first forty hours worked per week.  As a result, Plaintiff's hourly rate for his first forty hours worked each week computes to $12.50 per hour, making his overtime rate $18.75 per hour.  The Defendants did not pay Plaintiff at any rate of pay for any hours that he worked per week in excess of forty.

20.   From in or around February 2011 through in or around December 2013, Defendants paid Plaintiff $626 per week, with this amount meant to cover only Plaintiff's first forty hours worked per week.  As a result, Plaintiff's hourly rate for his first forty hours worked

each week computes to $15.65 per hour, making his overtime rate $23.47 per hour.   The Defendants did not pay Plaintiff at any rate of pay for any hours that he worked per week in excess of forty.

21.     From December 2013 through November 25, 2014, Defendants required Plaintiff to work, and Plaintiff did in fact work, forty-nine hours per week, all for Defendants' benefit.   To work these hours, Plaintiff worked five days per week.

22.     Specifically, Defendants required Plaintiff to work four eleven hour shifts each week, from 9:00 a.m. to 8:00 p.m. on Mondays through Thursdays and one five hour shift each week, from 9:00 a.m. to 2:00 p.m. on Fridays.   Defendants did not allow Plaintiff to vary his schedule, nor did they permit him to take scheduled or uninterrupted breaks during his shift. During this period, Defendants paid Plaintiff $526 per week, with this amount meant to cover only Plaintiff's first forty hours worked per week.   As a result, Plaintiff's hourly rate for his first forty hours worked each week computes to $13.15 per hour, making his overtime rate $19.725 per hour.   The Defendants did not pay Plaintiff at any rate of pay for any hours that he worked per week in excess of forty.

23.     Throughout Plaintiff's entire employment with Defendants, Defendants paid Plaintiff weekly via personal check and cash.   In doing so, Defendants intentionally did not furnish Plaintiff with a weekly wage statement that accurately listed all of the following: total hours worked, net wages, gross wages, and deductions.

24.     Moreover, Defendants intentionally did not provide Plaintiff with a wage notice at time of hire or annually that accurately detailed: the rate of pay and basis thereof; whether paid by the hour, shift, day, week, salary, piece, commission; the name of the employer; any "doing

business as" names used by the employer; the physical address of the employer's main office or principal place of business; and the telephone number of the employer.

25.     Defendants did not record and did not permit Plaintiff to record all of his hours worked.

26.     At all times, Defendant knew and understood the requirement to pay Plaintiff in accordance with the FLSA and NYLL.

27.     Despite Defendants' knowledge, Defendants acted in this reckless and willful manner in an effort to maximize their profits and minimize labor costs.

28.     On November 24, 2014, Plaintiff complained directly to Defendant Park about Defendants' unlawful pay practices, specifically stating that he was speaking to an attorney about filing a lawsuit against Defendants for violating the FLSA and NYLL.  In response, Park exclaimed that if plaintiff brought "an action, [Plaintiff] would be terminate[d]."  There is a recording of this conversation.

29.     On the very next day, November 25, 2014, Defendant Park summed Plaintiff to his office.  In the office, Defendant Park promptly terminated Plaintiff's employment.  When Plaintiff asked why he had lost his job, Defendant Park responded only by saying for "good cause."  When Plaintiff stated that he believed that he was terminated because he complained, Defendant Park called the police.  When the police arrived, the officer escorted Plaintiff off the property in front of customers.

30.     Pursuant to NYLL § 215(2)(b), contemporaneous with the filing of this Complaint, Plaintiff filed a Notice of Claim with the Office of the New York State Attorney General, thereby advising the aforementioned of his claim for retaliation under Section 215 of the NYLL.

## FIRST CLAIM FOR RELIEF AGAINST DEFENDANTS
### *Unpaid Overtime under the FLSA*

31.     Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

32.     29 U.S.C. § 207(a) requires employers to compensate their employees at a rate not less than one and one-half times their regular rate of pay for any hours worked exceeding forty in a workweek.

33.     As described above, Defendants are employers within the meaning of the FLSA while Plaintiff is an employee within the meaning of the FLSA.

34.     As also described above, Plaintiff worked in excess of forty hours each week, yet Defendants failed to compensate Plaintiff in accordance with the FLSA's overtime provisions.

35.     The Defendants' actions were in willful violation of the FLSA.

36.     Plaintiff is entitled to his overtime pay for all hours worked per week in excess of forty at the rate of one and one-half times his respective regular rate of pay.

37.     Plaintiff is also entitled to liquidated damages, attorneys' fees, and costs for the Defendants' violations of the FLSA's overtime provisions.

## SECOND CLAIM FOR RELIEF AGAINST DEFENDANTS
### *Minimum Wage Violations of the FLSA*

38.     Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

39.     29 U.S.C. § 206(a) prescribes a minimum wage that employers must pay to their employees for each hour worked. From July 24, 2008 to July 23, 2009, the applicable minimum wage under the FLSA was $6.55 per hour. From July 24, 2009 through the present, the applicable minimum wage under the FLSA is and has been $7.25 per hour.

40. As described above, Defendants are employers within the meaning of the FLSA, while Plaintiff is an employee within the meaning of the FLSA.

41. As also described above, Defendants did not compensate Plaintiff at the minimum hourly rate required by the FLSA for all hours worked.

42. Defendants' actions were willful violations of the FLSA.

43. Plaintiff is entitled to payment at the minimum wage for every hour he worked for Defendants pursuant to the FLSA's minimum wage provisions.

44. Plaintiff is entitled to liquidated damages, attorneys' fees, and costs for Defendants' violations of the FLSA's minimum wage provisions.

## THIRD CLAIM FOR RELIEF AGAINT DEFENDANTS
### *Unpaid Overtime under the NYLL*

45. Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

46. NYLL § 160 requires employers to compensate their employees at a rate not less than one and one-half times their regular rate of pay for any hours worked exceeding forty in a workweek.

47. As described above, Defendants are employers within the meaning of the NYLL, while Plaintiff is an employee within the meaning of the NYLL.

48. As also described above, Plaintiff worked in excess of forty hours each week, yet Defendants failed to compensate Plaintiff in accordance with the NYLL's overtime provisions.

49. The Defendants' actions were in willful violation of the NYLL.

50. Plaintiff is entitled to overtime pay for all hours worked per week in excess of forty at one and one-half times his regular rate of pay.

51. Plaintiff is also entitled to liquidated damages, interest, attorneys' fees, and costs for the Defendants' violation of the NYLL's overtime provisions.

### FOURTH CLAIM FOR RELIEF AGAINST DEFENDANTS
*Minimum Wage Violations of the NYLL*

52. Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

53. NYLL § 652(1) prescribes a minimum wage that employers must pay to their employees for each hour worked. From 2007 until July 23, 2009, the applicable minimum wage rate under the NYLL was $7.15 per hour. From July 24, 2009 until December 31, 2013, the applicable minimum wage rate under the NYLL was $7.25 per hour. From January 1, 2014 to the present, the applicable minimum wage rate under the NYLL is and has been $8 per hour.

54. As described above, Defendants are employers within the meaning of the NYLL, while Plaintiff is an employees within the meaning of the NYLL.

55. As also described above, Defendants did not compensate Plaintiff at the minimum hourly rate required by the NYLL for all hours worked.

56. The Defendants' actions were in willful violation of the NYLL.

57. Plaintiff is entitled to payment at the minimum wage for every hour that he worked for Defendants pursuant to the NYLL's minimum wage provisions.

58. Plaintiff is also entitled to liquidated damages, interest, attorneys' fees, and costs for the Defendants' violations of the NYLL's minimum wage provisions.

### FIFTH CLAIM FOR RELIEF AGAINST DEFENDANTS
*Failure to Pay Wages in Violation of the NYLL*

59. Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

60.     NYLL §§ 190, 191, and 663(1) require that employers pay wages to their employees in accordance with the agreed terms of employment.

61.     Defendants failed to compensate Plaintiff at his regular rate of pay for each hour that he worked in accordance with his terms of employment.

62.     Defendants' actions were in willful violation of the NYLL.

63.     Plaintiff is entitled to recover, at his respective regular rate of pay, for all hours that he worked for Defendants but for which he was not compensated.

64.     Plaintiff is also entitled to liquidated damages, interest, attorneys' fees, and costs for Defendants' failure to pay wages in accordance with the agreed terms of employment.

## SIXTH CLAIM FOR RELIEF AGAINST DEFENDANTS
### *Failure to Furnish Proper Wage Statements in Violation of the NYLL*

65.     Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

66.     N.Y. Lab. Law § 195(3) requires that employers furnish employees with wage statements containing accurate, specifically enumerated criteria on each occasion when employers pays wages to employees.

67.     As described above, Defendants willfully failed to furnish Plaintiff on each payday with accurate wage statements containing the criteria required under the NYLL.

68.     Pursuant to N.Y. Lab. Law § 198(1-d), Defendants are liable to Plaintiff in the amount of $100 for each failure of this sort.

69.     For their failures, besides the statutory penalties, Defendants are also liable to Plaintiff for liquidated damages, attorneys' fees, and costs.

## SEVENTH CLAIM FOR RELIEF AGAINST DEFENDANTS
### *Failure to Furnish Proper Wage Notices in Violation of the NYLL*

70.     Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

71.     N.Y. Lab. Law § 195(1)(a) requires that employers furnish employees with a wage notice at the time of hire and on an annual basis containing accurate and specifically enumerated criteria.

72.     As described above, the Defendants willfully failed to furnish Plaintiff with a wage notice containing the criteria enumerated under NYLL.

73.     Pursuant to N.Y. Lab. Law § 198(1-b), the Defendants are liable to Plaintiff in the amount of $50 for each week after the initial violation occurred.

74.     For their failures, besides the statutory penalties, the Defendants are also liable to Plaintiff for liquidated damages, attorneys' fees, and costs.

## EIGHTH CLAIM FOR RELIEF AGAINST DEFENDANTS
### *Retaliation under NYLL§ 215*

75.     Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

76.     NYLL § 215(1)(a) prohibits employers or their agents from discharging or otherwise discriminating or retaliating against any employee for having made a complaint to the employer regarding any violation of the NYLL.

77.     As described above, Plaintiff engaged in protected activity under the NYLL when he directly complained to Defendants about their refusal and/or failure to pay wages in accordance with the NYLL.

78.     As also described above, one day after Plaintiff complained, Defendants retaliated by terminating Plaintiff's employment and having the police escort him off the premises, in front of customers, as if he were some sort of criminal.

79.     As a direct and proximate result of the Defendants' unlawful retaliatory conduct in violation of the NYLL, Plaintiff has suffered, and continues to suffer, monetary and/or economic damages, severe mental anguish and emotional distress, including but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which he is entitled to an award of monetary damages and other relief.

80.     As a further result of the Defendants' unlawful retaliation conduct, Defendants are liable to Plaintiff for liquidated damages, punitive damages, interest, and attorneys' fees.

### DEMAND FOR A JURY TRIAL

81.     Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury in this action.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment against Defendants as follows:

A.      A judgment declaring that the practices complained of herein are unlawful and in willful violation of the aforementioned United States and New York State laws;

B.      Preliminary and permanent injunctions against Defendants and their officers, owners, agents, successors, employees, representatives, and any and all persons acting in concert with them, from engaging in each of the unlawful practices, policies, customs, and usages set forth herein;

C.     An order restraining Defendants from any retaliation against Plaintiff for participation in any form in this litigation;

D.     All damages that Plaintiff has sustained as a result of the Defendants' conduct, including all unpaid wages and any short fall between wages paid and those due under the law that Plaintiff would have received but for the Defendants' unlawful payment practices;

E.     An award of damages in an amount to be determined at trial to compensate Plaintiff for all monetary and/or economic damages, including but not limited to, the loss of past and future income, wages, compensation, job security and other benefits of employment suffered as a result of the Defendants' retaliatory conduct;

F.     An award of damages in an amount to be determined at trial to compensate Plaintiff for all non-monetary and/or compensatory damages, including but not limited to, compensation for mental anguish and emotional distress, humiliation, depression, embarrassment, stress and anxiety, loss of self-esteem, self-confidence and personal dignity, and emotional pain and suffering and any other physical or mental injuries suffered as a result of the Defendants' retaliatory conduct.

G.     Liquidated damages and any other statutory penalties as recoverable under the FLSA and NYLL;

H.     Punitive damages, to the extent recoverable by law, due to the Defendants' violation of Section 215 of the NYLL;

I.     Awarding Plaintiff his costs and disbursements incurred in connection with this action, including reasonable attorneys' fees, expert witness fees, other costs;

J.     Pre-judgment and post-judgment interest, as provided by law; and

14

K.    Granting Plaintiff any other and further relief as this Court finds necessary and

proper.

Dated: Great Neck, New York
       December 2, 2014

Respectfully submitted,

BORRELLI & ASSOCIATES, P.L.L.C.
*Attorneys for Plaintiff*
1010 Northern Boulevard, Suite 328
Great Neck, New York 11021
Tel.:    (516) 248 – 5550
Fax.:    (516) 248 – 6027

By:

ADAM A. BIGGS (AB 1228)
ALEXANDER T. COLEMAN (AC 1717)
MICHAEL J. BORRELLI (MB 8533)